IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **REGINA GRIFFIN,** | § § § | |
| **Plaintiff,** | § § | |
| vs. | § § | |
| | § | CASE NO. - |
| **KIAH, LLC. (CH 39), TRIBUNE BROADCASTING COMPANY, LLC, NEXSTAR MEDIA INC, NEXSTAR MEDIA GROUP, INC. AND NEXSTAR BROADCASTING GROUP, INC.,** | § § § § § § § § | JURY TRIAL DEMANDED |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE:

Plaintiff Regina Griffin ("Griffin" or "Plaintiff") complains of Defendants KIAH, LLC (CH 39), Tribune Broadcasting Company, LLC, Nexstar Media Inc., Nexstar Media Group, Inc. and Nexstar Broadcasting Group, Inc. (collectively "Defendants") as follows:

### I. Introduction

This is an action for monetary damages, pursuant to Title VII of the Civil Rights Act of 1964 as.amended, 42 U.S.C. §§ 2000e, et seq. (hereinafter "Title VII") to redress Defendants' unlawful employment practices against Plaintiff including Defendants' unlawful harassment,

discrimination and retaliation against Plaintiff because of her gender and engaging in protected conduct, respectively.

## II.  The Parties

1. Plaintiff is an individual residing in Los Angeles, California.

2. Defendant KIAH, LLC (CH 39) ("KIAH" or the "Station") is a Delaware limited liability company with its principal business in Houston Texas. KIAH may be served process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. Defendant Tribune Broadcasting Company, LLC ("Tribune") is a Delaware limited liability company.  Tribune does not have a registered agent listed on the Texas Secretary of State website.  On information and belief, Tribune may be served by serving Defendant Nexstar Media, Inc.

4. Defendants Nexstar Media Inc., Nexstar Broadcasting Group, Inc. and Nexstar Media Group, Inc. are Delaware corporations with their corporate headquarters and principal place of business in Irving, Texas.  Nexstar Media Inc. and Nexstar Broadcasting Group, Inc. may be served process through their registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## III.  Jurisdiction and Venue

5. This Court has jurisdiction over the claims herein pursuant to 28 U.S. C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiffs civil rights under Title VII. This Court has subject matter jurisdiction over this action under 42 U.S.C. 2000e *et seq.* and because the amount in controversy is within the Court's jurisdictional limits.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 139l(b)(1) because Defendant Nexstar has its principal business location/resides in this District.

### IV. Facts

7. At all relevant times to this Complaint, Defendant KIAH-TV was a TV station in Houston Texas wholly owned by Tribune Broadcasting Company. In or about the fall of 2019, Tribune was acquired by Nexstar Media Group, Inc. through a merger with Nexstar Media Group, Inc. being the surviving entity (the Nexstar related entities are collectively referred to herein as "Nexstar").

8. Plaintiff is a black female. She was hired by KIAH as Executive Producer of NewsFix, a daily television news broadcast of KIAH in late 2015 and began in that position on December 2, 2015. At the time Plaintiff was hired, she was the only female in a management position for KIAH.

9. As Executive Producer, Plaintiff was responsible for four (4) daily news shows KIAH produced at 5:00 and 9:00 pm in Houston as well as a syndicated show produced in Houston but broadcast by the Tribune affiliate station in south Florida (WSFL). The entire editorial staff reported to Plaintiff including all producers and multi-media journalists.

10. At all relevant times, three white male managers managed and/or worked with alongside Plaintiff. They included News Director Gary Jaffe (who Plaintiff reported to), and Managing Editor Steve Mark and Operations Manager Cameron Miller (both of whom were colleagues of Plaintiff).

11.     Over the course of her employment with Defendant, Plaintiff was subjected to various acts of discrimination and harassment by Jaffe, Mark and Miller.  Among other conduct, Plaintiff was routinely talked down to and embarrassed by the men in front of her staff.   Other female employees were likewise talked down to by Jaffe in particular who would raise his voice and talk to females like children and/or to intimidate them whereas he would not treat similarly situated males in the same way.

12.     Plaintiff's position/authority was also routinely disregarded by her male colleagues including specifically Mr. Miller and Mr. Marks  On multiple occasions, the men would supervise and direct Plaintiff's staff without consulting Plaintiff who was their direct supervisor  Plaintiff complained to a senior Tribune HR manager who acknowledged the impropriety of the conduct yet did nothing to correct it.

13.     Plaintiff and other female colleagues were also routinely excluded from working lunches conducted by News Director Jaffe.  Such exclusions necessarily put Plaintiff and her colleagues at a disadvantage, including with promotional opportunities.  In one case, a female employee with over five years experience at the Station was passed over by promotion that was given to a male with no experience.

14.     Plaintiff and other female colleagues were routinely blamed for editorial and journalistic decisions which had been made by Jaffe, Mark and/or Miller - even though Plaintiff (or her colleagues) had nothing to do with the decisions.  Further, males were routinely given a pass for their mistakes or allowed to abandon assignments that made them uncomfortable whereas female employees were immediately disciplined if they voiced concerns about an assignment   On one occasion, a male employee/photographer was excused from an assignment by Jaffe, who went so far as to "high five" the man in front of the newsroom staff, after the man refused to fulfill an

assignment. Plaintiff complained to the Station's General Manager Harvey Saxer about disparate treatment given that a female employee had recently been required to complete an assignment over her objection where she felt uncomfortable and feared for her safety.

15. Plaintiff complained multiple other times about differential and hostile treatment by male staff - as did other female colleagues at the Station. At one point, a senior HR executive asked Plaintiff if she considered the Station a "boys club" to which Plaintiff responded that she did. In another conversation with the HR executive, a colleague stated (with Plaintiff present) that KIAH was not only a "boys club" but was an outwardly hostile place for women to work. Like Plaintiff's prior complaints, nothing was done by KIAH/Tribune in response to this complaint.

16. In yet another conversation, Plaintiff stated that she was feeling "beaten down" by the treatment of the men at the Station and was considering leaving the Station.. The HR executive responded by asking whether it would "make any difference if changes were made since she was considering leaving" and that "she might need to seek work elsewhere." The executive then followed up on three occasions by asking Plaintiff "when she would be resigning." Significantly, there was no effort at this time to investigate Plaintiff's allegations - rather the men's conduct became accepted by Station management and HR executives.

17. Several weeks after the above exchange, Plaintiff advised the HR executive that she had changed her mind about leaving. Almost immediately thereafter Plaintiff was placed on a Performance Improvement Plan ("PIP") by Jaffe. Plaintiff complained to the HR executive and was informed that she had "approved" the plan and that Plaintiff "would be terminated if she did not improve within sixty (60) days.

18. Plaintiff promptly responded to the PIP in detail - pointing out its many inaccuracies - such the PIP was thereafter withdrawn by the Station. Plaintiff, however, still faced retaliation in

**PLAINTIFF'S ORIGINAL COMPLAINT - PAGE - 5**

that her evaluation contained the same false information - which evaluation remain unchanged in Plaintiff's file.

19. At this point, and having exhausted attempts to raise complaints of discrimination and harassment to management herself - and having to refute a baseless PIP that was clearly retaliatory for her prior complaints, Plaintiff retained legal counsel and re-urged her complaints through counsel.

20. In response to Plaintiff's formal legal complaint, Tribune claims to have conducted an investigation.  For all purposes, however, the investigation was a sham with Defendant ultimately concluding that Plaintiff's complaints were not "credible" - this despite similar complaints by other female employees and documented evidence of discrimination and retaliation.  Shortly thereafter in a conversation between Plaintiff and a female HR executive for Tribune, the HR executive effectively blamed Plaintiff for the hostile work environment at KIAH.  She admitted that she had "known Plaintiff would not get along with Jaffe and the other male managers.'  In doing so, the executive admitted KIAH was aware of the problems at the Station and failed and/or refused to address them.

21. Following the investigation, Jaffe began excluding Plaintiff from KIAH planning meetings which she had previously attended and which were essential for her to perform her job. In addition, editors began withholding scripts and other information Plaintiff needed to review. The retaliation was so obvious that even male colleagues began asking why Plaintiff was being excluded from basic work interactions.

22. Seeing no future at the Station, and having dealt with extensive stress for over a year with no support from management, Plaintiff began searching for other opportunities.  She soon learned, however, that KIAH employees were attempting to sabotage her efforts by informing at

least one potential employer that she had recently been on a PIP - the same one that was discredited and rescinded. Though Plaintiff did not obtain that position - likely related to the disparaging statements made about her - she ultimately found a new job and resigned from the Station on June 12, 2017.

23. Plaintiff filed a Charge of Discrimination with the EEOC and the Equal Employment Opportunity Commission ("EEOC") on October 5, 2017. After an investigation into Plaintiff's allegations that included the EEOC securing supporting affidavits from former employees of KIAH, the EEOC issued a "Cause Determination" against Defendants on August 8, 2021. In that "Determination" directed to Nexstar, the EEOC concluded:

> The evidence revealed that Charging Party was performing satisfactorily as an Executive Producer during the term of her employment. The evidence revealed that Respondent created, maintained, tolerated, and encouraged a hostile work environment toward her and other women because of their gender. The evidence also revealed that Charging Party made the Respondent aware of the harassment and Respondent failed to take corrective action to stop the unlawful practice. After Charging Party reported the harassment, she was retaliated against as the harassment worsened. The Charging Party was then constructively discharged.

24. The EEOC thereafter issued a right to sue on September 28, 2021. This action is filed within 90 days of Plaintiff's receipt of the right to sue.

## V. Causes of Action

### COUNT I - DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### (Gender and Hostile Work Environment)

25. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-24 above.

26. Plaintiff is an employee within the meaning of Title VII, 42 U.S.C. 2000e(f).

27. Defendant is an employer within the meaning of Title VII, 42 U.S.C. 2000e(b)

28. All conditions precedent to filing this action for gender discrimination and hostile work environment under Title VII have been met. Plaintiff timely filed with the the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against Defendants on October 5, 2017. Plaintiff received a Notice of Right to Sue from the EEOC on September 28, 2021 - which is within 90 days of the filing of this Complaint.

29. Defendant has violated Title VII, 42 U.S.C. 2000e *et seq.,* in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's gender - female.  Further, Defendants' actions and inactions towards Plaintiff created a hostile work environment based on gender.

30. As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages including back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and seeks to recover for those sums. Defendant's action was intentional, willful and malicious so that Plaintiff is entitled to recovery of exemplary damages.

31. Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k).

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

32. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-31 above.

33. Plaintiff engaged in protected activity under Title VII while employed by Defendant including complaining of discrimination and harassment.

34. Defendant engaged in intentional retaliation against Plaintiff for Plaintiff's participation in protected activity resulting in Plaintiff ultimately being constructively discharged - among other conduct..

35. Defendant's conduct violated Title VII.

36. Plaintiff has satisfied all statutory prerequisites for filing this action for retaliation.

*37*. Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which Plaintiff is entitled to damages.

38. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

39. Defendant. has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### REQUEST FOR JURY

PLAINTIFF HEREBY REQUESTS A JURY IN THIS MATTER.

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer herein and that on final trial, the Court enter judgment as follows:

(1) Judgment in favor of Plaintiff against Defendants for Plaintiff's backpack, front pay, court costs and reasonable attorneys' fees, expert witness fees, and deposition copy costs;
(2) Punitive damages and damages for emotional distress;
(3) Pre-judgment and post-judgment interest at the maximum rate allowable by law; and
(4) Such other and further relief to which Plaintiff may be justly entitled.

Dated - December 22, 2021

Respectfully submitted,

**PLAINTIFF'S ORIGINAL COMPLAINT - PAGE - 9**

THE HARTMANN FIRM
By: /s/ Clay A. Hartmann
Clay A. Hartmann
Texas State Bar No. 00790832

THE HARTMANN FIRM
400 N. St. Paul, Suite 1420
Dallas, Texas 75201
(214) 828-1822 - Telephone
clay.hartmann@thehartmannfirm.com

**ATTORNEYS FOR PLAINTIFF**